Shauck, J.
The judgment against Ferson is not complained of; but the association seeks a reversal of the judgment in favor of his surety, because (1st), the special finding of facts made in the court of common pleas is not sustained by the evidence, and (2), the facts found do not warrant the judgment in favor of Gfreenleaf.
It seems clear to us that the trial court erred in finding from the evidence that the drafts or time checks were taken' in payment of the amount and without the knowledge or assent of Gfreenleaf. True, Gfreenleaf so testified in the case. But Horn’s testimony to the contrary shows a much more probable course of proceeding, and is more consistent — indeed entirely consistent — with the conceded and established facts.
*88 All the witnesses agree that when the settlement was made-in the office of the bank, Ferson communicated to Horn and Dowdall, who represented the plaintiff, the proposition of the bankers that checks payable in three, four and five days,, should be received, and that this proposition was distinctly rejected, they saying that they would notify Greenleaf, and leaving the bank as if for that purpose. Dowdall died before the trial, but Horn testifies that they went to Greenleaf’s store, reported to him the precise situation, and the proposition of the bank; and that he requested them to take the checks, saying that if anything was made of them it would be so much better for him. This was in accordance with the interest of all the parties. It is what both would have done, acting intelligently in view of the situation. The conclusion of the trial court requires the assumption that. Horn and Dowdall having refused the checks changed their minds without reason, and that they deliberately released a responsible-surety, accepting in lieu of his liability, the check of an insolvent drawer upon a bank that was confessedly without funds.
The finding in this respect ought to have been that all that done on the 18th of January was done with Greeleaf’s express-assent.
The trial court further found that in selecting the bank of Moodie, Hubbard & Co. as the depository of the fund, Ferson acted in good faith and without negligence. The evidence-upon this point is meager. Ferson testifies that he understood the bank to be solvent, that it was doing a regular banking business, and that he expected checks drawn upon this fund to be paid when presented. Others testify that it was doing a regular banking business. There is no evidence-to show that it was not of good repute in business circles. It does appear that Ferson had close business relations with one of the firm, and that his office was in the same building with the bank. Upon this state of the evidence we cannot say that the finding in this respect was wrong.
Although it found this fact, the trial court must have regarded it as of no significance, else it would not have rendered judgment against Ferson. Did the exercise by Ferson of *89 good faith and reasonable care in the selection of a depository of the fund constitute a performance of his duty under the bond which was to “ faithfully discharge all and singular the duties of his office as treasurer, and faithfully- collect, pay over and account for all moneys,” etc.? Upon both principle and authority this question must be answered in the affirmative. The obligation of the trustee is to exercise such care and intelligence in the keeping of trust funds as men ordinarily exercise in their own affairs.
J. T. Holmes, for plaintiff.
Lorenzo English, contra.
Where a trustee, acting in good faith and without negligence, deposits trust funds in a reputable banking house to his credit as trustee, and not mingled with his, own funds, he is not liable if they are lost by a failure of the bank. Perry on Trusts, sec. 443; Pomeroy’s Eq. Jur., sec. 1067, et seq.; McLaws’s Adm’r v. McGregor’s Adm’rs, 1 C. S. C. R. 327.
Judgment affirmed.